**ARNALL GOLDEN GREGORY LLP**
Richard T. Collins (Bar No. 166577)
  rich.collins@agg.com
Damon D. Eisenbrey (Bar No. 215927)
  damon.eisenbrey@agg.com
Jennifer L. Shelfer (*admitted Pro Hac Vice*)
  jennifer.shelfer@agg.com
Thomas E. Kelly (*admitted Pro Hac Vice*)
  tom.kelly@agg.com
Landen P. Benson (*admitted Pro Hac Vice*)
  landen.benson@agg.com
Avery E. Carter (*admitted Pro Hac Vice*)
  avery.carter@agg.com
 2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Phone: (202) 677-4030

**KANTOR & KANTOR, LLP**
Lisa S. Kantor (Bar No. 110678)
  lkantor@kantorlaw.net
Timothy J. Rozelle (Bar No. 298332)
  trozelle@kantorlaw.net
9301 Corbin Avenue, Suite 1400
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile:  (818) 350-6272

Attorneys for Plaintiff Ryan S., individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| RYAN S., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC., a Delaware corporation, et al.<br><br>Defendants, | Case No. 8:19-cv-1363-JVS-KES<br><br>Hon. James V. Selna<br><br>**JOINT STATUS REPORT** |

**TO THE HONORABLE COURT:**

Pursuant to Special Master's Order Regarding Meet and Confer Efforts & Subsequent Briefing Schedule on January 12, 2026, (ECF No. 179), Plaintiff Ryan S., individually and on behalf of all others similarly situated ("Plaintiff"), and Defendants UnitedHealth Group, Inc., United HealthCare Services, Inc., United Healthcare Insurance Company, UHC of California, United HealthCare Services, LLC, United Behavioral Health, Inc., OptumInsight, Inc., Optum Services, Inc., and Optum, Inc. (collectively, "Defendants," and together with Plaintiff, the "Parties"), having met and conferred on Wednesday, January 14, 2026, regarding (i) the completeness of the class claims data and (ii) the design and size of a representative sampling protocol, hereby respectfully submit the following Joint Status Report:

## I. Claims Data Completeness

During the conference, Defendants represented that the class claims dataset is complete with respect to the agreed-upon set of procedure codes used to define the dataset. Plaintiff previously raised concerns that certain denials reflected in the dataset reference paid claims—such as facility per diem or other facility charges—that do not appear in the data. According to United, if these other claims do not appear in the dataset it is because they do not contain a claim line with one of the agreed upon procedure codes that were used to pull the dataset.

To address this issue, the Parties reached a tentative agreement that, for any patient in the sample, Plaintiff will identify all claims where Plaintiff contends the claim's adjudication history or denial rationale references a different paid claim as the basis for the denial, and Defendants will produce the claim(s) referenced in the adjudication history or denial rationale, even if those referenced claims fall outside the agreed-upon set of procedure codes. This process is intended to permit review of the complete adjudication history for the sampled patients and evaluation of the stated bases for denials reflected in the claims in the sample.

Plaintiff advised that, in light of additional information provided by Defendants regarding how the dataset was pulled based on the agreed upon set of procedure codes, Plaintiff will confer further with its consulting expert regarding specific data completeness concerns previously identified and will follow up with counsel for Defendants promptly after completing that consultation. Subject to Plaintiff's consultation with his consulting expert, the Parties' tentative agreement will resolve any disputes regarding the sufficiency of the claims data to draw the claim sample, and based on that tentative agreement, the Parties do not anticipate further briefing on data integrity or completeness issues or on Plaintiff's previous request for an order directing Defendants to re-draw the sample. However, Plaintiff noted that its consulting expert is recovering from a recent automobile accident and concussion, but that Plaintiff intends to proceed as expeditiously as practicable.

## II.  Sampling Design and Sample Size

The Parties agree that sampling is appropriate but remain at an impasse regarding the appropriate structure and size of a representative sample.

Plaintiff maintains that the sampling protocol must be designed to be representative of the putative class and capable of supporting reliable class-wide inferences for purposes of Rule 23. Plaintiff contends that the previously agreed-upon sample structure includes nine analytically distinct categories based on claim type (outpatient, ancillary, laboratory) and payment outcome (paid, denied, mixed), and that a minimum of 30 observations within each category—resulting in a total sample of 270 patients—is necessary to achieve representativeness at that level.

Defendants disagree and contend that the sampling structure is more than sufficient. Based on Defendants' consultation with their own consulting statistician, Defendants agree that a sample of 30 observations per group is appropriate for the purposes of class certification. There are three relevant groups for the purpose of class certification and sampling: outpatient, laboratory, and ancillary claims. Each of those groups is defined by a specific set of procedure codes, to which the parties have

already agreed. Defendants' proposal thus already exceeds the threshold of 30 observations per sampled group, and instead includes 51 members per group. While each of the three groups has sub-categories based on whether the member's claims were "all-paid", "all-denied", or " mixed", these sub-categories are not independently relevant for the purpose of class certification; Plaintiff does not seek to certify separate subclasses of individuals depending on whether claims were denied, paid, or both. Moreover, there are a total of 1,812 claims in the sample with an average of 604 claims in each group, and an average of 201 claims in each of the 9 subgroups. Thus, there are more than a sufficient number of claims in each group, and subgroup, for the purpose of class discovery and class certification briefing.

Accordingly, although the parties were able to make progress and reach tentative agreement on the "data integrity" questions by Plaintiff, the Parties were unable to resolve their dispute regarding the proper size of a sample during the meet and confer discussions. The Parties anticipate that further guidance from the Special Master will be required regarding the appropriate sample size following the briefing schedule set forth by the Special Master. (*See* ECF No. 179.)

Dated: January 14, 2026

**ARNALL GOLDEN GREGORY LLP**

By: */s/ Richard T. Collins*
Richard T. Collins
Damon D. Eisenbrey
Jennifer L. Shelfer
Thomas E. Kelly
Landen P. Benson
Avery E. Carter
*Attorneys for Plaintiff Ryan S.*

| | |
|---|---|
| Dated: January 14, 2026 | **CROWELL & MORING, LLP**<br><br>By: */s/ Jennifer S. Romano*<br>Jennifer S. Romano<br>Andrew Holmer<br>Kenneth R. Taketa<br><br>*Attorneys for Defendants* |

ARNALL GOLDEN GREGORY LLP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE: (202) 677.4030
WWW.AGG.COM

- 4 -
JOINT STATUS REPORT